# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; see Privacy Act Statement on reverse before completing this form.

ENTER CHARGE NUMBER
☐ FEPA
☒ EEOC  430-2016-01198

_____ and EEOC
(State or local Agency, if any)

**NAME** (Indicate Mr., Ms., or Mrs.)
LATANYA HARRIS

**HOME TELEPHONE NO.** (Include Area Code)
(704) 649-6336

**DATE OF BIRTH**
[redacted] 1959

**STREET ADDRESS**
9300 LINDAHL LANE

**CITY, STATE AND ZIP CODE**
CHARLOTTE, NC 28277

**COUNTY**
MECKLENBURG

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

**NAME**
AMERICAN AIRLINES

**NO. OF EMPLOYEES/MEMBERS**
300+

**TELEPHONE NUMBER** (Include Area Code)
(305) 870-2494

**STREET ADDRESS**
Post Office Box 527300 MD 9000

**CITY, STATE AND ZIP CODE**
Miami, Florida 33152-7300

**NAME**

**TELEPHONE NUMBER** (Include Area Code)

**STREET ADDRESS**

**CITY, STATE AND ZIP CODE**

**CAUSE OF DISCRIMINATION BASED ON** (Check appropriate box(es))

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ AGE  ☒ RETALIATION  ☒ DISABILITY  ☐ OTHER (Specify)

**DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE:** 09/28/15 and continuing
(Month, day, year)

**THE PARTICULARS ARE** (If additional space is needed, attached extra sheet(s)):

Please see attachment to charge of discrimination.

[RECEIVED stamp: APR - 6 2016, EEOC, CHARLOTTE, N.C.]

I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary to meet State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and beliefs.

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month and year)

LATANYA HARRIS
Date   Charging Party Signature
04-01-2016   /s/ Latanya Harris

EXHIBIT 1

## ATTACHMENT TO CHARGE OF DISCRIMINATION
### *Latanya Harris v. American Airlines*
### EEOC Charge No. _____



I. I am an African American citizen and resident of Mecklenburg County, North Carolina. My date of birth is ▇▇▇▇ 1959. I am an individual with a disability as defined by the Americans with Disabilities Act, as amended. I filed a charge of race and disability discrimination against US Airways, Inc., the Respondent's predecessor, during 1999 (EEOC Charge No. 110984226) which, with the assistance of the EEOC, was resolved in my favor. On May 4, 2001, I filed a charge of retaliation against the Respondent (EEOC Charge No. 110A12974). Many of the same individuals who were involved in those charges remain employed by the Respondent and remain in my supervisory chain of command.

II. I have been employed with the Respondent and with its predecessor, US Airways, Inc., formerly known as Piedmont Airlines, since June 1, 1985. I was originally hired by Piedmont Airlines as a Flight Attendant. I became a Supervisor – In-Flight Operations on February 28, 2000, until that position was changed by Respondent on July 2, 2015 in connection with its merger with US Airways.

During 2010, I was required by former Charlotte Base Manager, Tom Kilheeney, to complete and submit a Request for Accommodation because I had asked a question concerning Quality Assurance and Recognition Rides. I had raised a question about the QARs due to a medical condition that made it difficult to fly. US Airways, however, never responded to this accommodation request, but instead, assigned me to work at as an In-Flight Supervisor at the Crew Services Center located in Charlotte, NC. As a result of this move, the group of 250 Flight Attendants who reported to me was given to Josh Sauls, a non-disabled, white male who was at that time 30 years of age. As an In-Flight Supervisor at the Crew Services Center, I became responsible for insuring that Flight Attendants have everything they need to do their jobs and for handling any complaints or concerns that they may have. I was responsible also for logging complaints and compliments, handling delay investigations and handling such issues as occupational injuries, handling FMLA leave issues and contract interpretation. From time to time in this position, I may have to walk to the flight gate to handle certain issues, but only occasionally. This is a desk job primarily which requires me to have access to a computer and phone. Walking for any great distance has never been an essential function of my job.

III. During July, 2015, the Respondent changed by title and status in order to more closely align my position with our counterparts within American Airlines. My job duties, however, have not changed. As a result of the re-alignment, my position was re-classified as a Level 2 Duty Manager – Flight Services. Under Respondent's system, the position of Duty Manager is an entry level management position. In essence, because of the merger, I have been effectively demoted to a position which is not consistent with my experience and background. Despite the reclassification of my job, my duties at the Crew Service Center have remained the same. However, because I have over 16 years of experience and I am the most senior employee at the

*ATTACHMENT TO CHARGE OF DISCRIMINATION*
*Latanya Harris v. American Airlines*
*EEOC Charge No.* _____



Crew Service Center and at the top of the Level 2 pay band, my salary has been frozen. Other, similarly-situated younger, white and non-disabled Duty Managers with less experience than me were placed into Level 3 or 4 classifications as a result of the merger. Further, I did not receive the pay increases enjoyed by almost everyone in the company following the merger. Many of my white, similarly-situated colleagues have received 2 -3 pay increases. I have not had a pay increase since 2014.

I have interviewed for several Level 3 positions since the merger, but have been passed over for selection in favor of younger, white, non-disabled, employees. I complained to Laurie Lofgren, Flight Service Managing Director, Base Operations & Administration, on September 17, 2014, regarding my demotion to a Level 2 Duty Manager as well as Respondent's refusal to select me for other Level 3-5 positions for which I had applied and for which I am qualified.

Despite the rejection of my applications for promotion to Level 3-5 positions, I continued to apply for positions during 2015. For instance, in January, 2015, I applied for the positions of Specialist – Diversity & Inclusion and Flight Service Base Manager-DOT. In May, 2015, I applied for the position of Analyst – Co-Brand Managed Programs, and, in December, 2015, I applied for the position of Sr. Analyst Safety Management Systems. I was not selected for any of these positions.

In February, 2016, I applied for the positions of Sr. Analyst Claims – located in Dallas/Fort Worth and Flight Service Manager in Charlotte. I was not selected for the Sr. Analyst Claims position. Even though I was interviewed for the Flight Service Manager position in Charlotte, I have not been invited for a second interview.

IV. I began to have difficulty with prolonged walking, standing and sitting due to herniated disc disease during 2014. On December 14, 2014, I submitted another accommodation request, but received no response from Human Resources other than a request for clarification pertaining to my physician's request that I not engage in "prolonged standing." In anticipation of spinal surgery on October 26, 2015, I again requested on September 28, 2015, a reasonable accommodation which would permit me to perform the essential functions of my job. I was having extreme pain and trouble walking at this time. I requested to work from home temporarily until I was able to return to work following my surgery. I had worked remotely for approximately four months from Dallas, Texas, having access to my work site via phone and computer and believed that this would be a reasonable solution as I recovered. My doctor and I completed a Reasonable Accommodation Request form and also submitted an FMLA Certification Form. Dan Cleverly, Respondent's HR Business Partner, came to Charlotte to meet with me to discuss this request



## ATTACHMENT TO CHARGE OF DISCRIMINATION
### *Latanya Harris v. American Airlines*
### EEOC Charge No. _____

V. On October 5, 2015, my immediate supervisor, Michael Leary, Base Operations Manager, threatened me with disciplinary action, up to termination, because I did not attend a company team building event and purportedly "failed to follow protocol." The event was a "scavenger hunt" which would have required me to walk and stand for a long period of time. The "scavenger hunt" was supposed to cover 6 miles in uptown Charlotte. At this time, it was very apparent that I had trouble walking or standing. In addition to my spinal issues, I was scheduled to have cataract surgery on September 22, 2015 and on October 13, 2015. Prior to this event, I asked permission to switch my schedule with another employee. I was given permission to do so and as a result of the switch, I missed the "scavenger hunt." During my discussion with Mr. Leary, he accused me of disappearing and not following protocol because he wanted me to call him on his cell phone, although I had spoken with him face-to-face in his office (witnessed by 2 colleagues) about the upcoming scavenger hunt and my surgery. He told me that our next conversation would result in my termination. None of my colleagues in the Crew Service Center have been required to notify Mr. Leary of absences via his cell phone.

Mr. Leary's tone and demeanor during this meeting was degrading and disrespectful and he alleged that he did not know that I could not participate in the team-building exercise. However, I reminded Mr. Leary that we had spoken face-to-face about my switching my schedule and that I would not be in attendance for the event. Moreover, each manager receives an email notification whenever an employee applies for FMLA leave.

VI. On or about November 17, 2015, following my back surgery, I submitted additional information requested by Mr. Cleverly regarding my accommodation request. My physician indicated that I would be able to work from home beginning December 10, 2015. On December 14, 2015, I received notification from Dan Cleverly that my request for reasonable accommodation had been denied. In addition, the letter stated I could continue my medical leave of absence until January 17, 2016. According to Mr. Cleverly, Respondent claimed that a work-at-home accommodation would not permit me to perform an essential element of my job, e.g. – ramping, which is the process of physically walking to the gates at the airport in order to check on flight attendants. I disagree with this assertion. "Ramping" has never been an essential function of my job. Further, Mr. Leary has assigned flight attendants to do this function in the past in an effort to accommodate other Duty Managers.

VI. On January 5, 2016, I met with my surgeon and discussed with him the denial of my accommodation request. At this point, I felt very pressured and concerned about Michael Leary's

threat of termination. I asked my physician to return me to work on January 15, 2016, for 4 hours per day for one month. I faxed this new accommodation request to the Absence and Return Center on January 5, 2016. Respondent, however, did not act on my request to return to work until February 12, 2016, at which time it notified me that I could return on January 15, 2016. Because of Respondent's error in delaying its response to me, and the stress of not hearing anything from Respondent since my January 5, 2016 accommodation request, my doctor and I were forced to submit another accommodation and FMLA leave request, indicating that I could return to work on March 1, 2016 for half days with no restrictions and that I could return to work full time on April 1, 2016. As a result of the confusion surrounding when Respondent would allow me to return to work, my short-term disability benefits were terminated during the month of January, 2016, and it has been a challenge to get that issue resolved. Additionally, because my return to work on January 17th was mishandled by the Absence & Return Center, I did not accrue sick or vacation time for the months of January and February, 2016. I also lost my regular pay despite company policy which indicates that I am to be paid my normal salary.

VII. I sent an email to Hector Adler, Respondent's VP of Flight Services, on January 29, 2016, in order to complain about Michael Leary's behavior toward me with regard to my FMLA leave and my inability to participate in the team-building event and the fact that I have been consistently passed over for promotional opportunities. In response, Mr. Adler referred my complaint to Lynn Vaughn, the new HR Director for Air Operations. However, I have not heard from Ms. Vaughn regarding my complaints. This is not the first time that I have reached out to Mr. Adler to complain about my situation. I have spoken to him at least twice: once in 2014 and again, in 2015, when I was assigned temporarily to Dallas/Fort Worth for a special project. Indeed, I had been advised on one occasion, that Mr. Adler had commented that I "was not part of his vision" for Flight Services. In June, 2015, I confronted Mr. Adler about this comment; while he denied making this comment, he encouraged me to continue to apply for positions. This encouragement now rings hollow to me.

VIII. While I have returned to work on a part-time basis pursuant to my doctor's instructions, Respondent has declined to pay my full salary despite the fact that its policy indicates that employees returning to a modified work schedule will be paid at full salary. I received a paycheck deposit from Respondent on March 18th covering the period of March 1 through 16, 2016 of only $222.00. This amount is far below my normal bi-weekly salary.

IX. Although I am still recovering from my surgery and while I must wear a back brace and use a cane, I have been told by Charlotte Base Manager, Chris Nielsen, that I am expected to perform duties that require a lot of walking. I have reminded Mr. Nielsen that I have returned to work almost 2 months earlier than expected and that I will need time to be able to walk extensively. Although the airport has a number of golf carts that could take me to the gates if

**ATTACHMENT TO CHARGE OF DISCRIMINATION**
*Latanya Harris v. American Airlines*
**EEOC Charge No.** _____



needed, I have not been provided one.

Jim Oskins, white, was a flight attendant who was allowed to work in the Crew Service Center as an accommodation due to injuries sustained in a skiing accident. Mr. Oskins was allowed to work in my office even though his status showed him as being on a medical leave of absence. Many special provisions were made for him until he retired.

X. I was informed by Dennis Hines, my new supervisor, on March 31, 2016, that I did not receive the position of Flight Services Manager because I purportedly displayed "low energy" during the interview for the position. When asked whether I had any response, I replied that I had attended the interview while still on medical leave due to spinal surgery. I was still wearing a back brace and using a cane at the time of the interview and it was the first time I had ventured from my home and walked for a prolonged time. I provided this information to Mr. Hines and told him by the time I had gotten to the interview, I was exhausted. It was apparent at the time of the interview, however, that I had a physical disability and I believe that the "low energy" comment is a pretext for disability, age, and race discrimination. The persons whom have been selected to fill the Flight Services Manager positions are a male and a female, both are white, not suffering from any disability, and are believed to be younger than me.

Mr. Hines and Mr. Leary have recently switched positions and I now report directly to Mr. Hines. This is a recent development and I do not know what has caused this change in supervision.

XI. Based upon the foregoing facts, I contend that I have been subjected to discriminatory terms and conditions of employment and have been denied promotional opportunities because of my race, disability, and age in violation of Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act and the Age Discrimination in Employment Act. I further allege that I have been subjected to discriminatory terms and conditions of employment and have been denied promotional opportunities in retaliation for having raised internal complaints of discrimination with the Respondent and for having filed previous charges of discrimination against Respondent's predecessor, US Airways, Inc. in violation of Title VII, the ADA, and the ADEA.